IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOANNA CHRISTOPOULOS, as Legal Guardian And Next Friend of D. Wertz and P. Wertz,<br>    Plaintiff,<br><br>  v.<br><br>LINDA TROUT et al.,<br><br>    Third-Party Defendants. | Case No. 15 CV 3466<br><br>Judge Joan B. Gottschall |

## MEMORANDUM OPINION AND ORDER

This case involves a dispute between two groups of individuals over the proceeds of a group life insurance policy covering Howard Wertz ("Wertz"), who passed away on March 8, 2015. *See* Resp. to Pl.'s SOF ¶¶ 1–2, 8, 15, ECF. No. 76. Wertz had two minor children, P. Wertz and Dionysius Wertz, who has since turned 18. *Id.* ¶¶ 4, 5, 9–11. Acting as their next friend, Joanna Christopoulos ("Christopoulos"), their mother, brought this action, shortly after Wertz's death, in the Circuit Court of Cook County against the company that issued the policy, Prudential Insurance Company of America ("Prudential"). Prudential removed the suit to this court and, due to the existence of competing claims, deposited (interpleaded) the proceeds in the court's registry, so the court could settle the dispute. *See* ECF Nos. 36, 38. The case was stayed pending related litigation in state court. That litigation has concluded.[1] *Wertz v. Christopoulos*, 2017 IL App 160560-U, *appeal denied* 2018 IL 122880 (Ill. App. Ct. Jan. 8, 2018).

---

[1] A copy of the Illinois appellate court's order cited in the text can be found in this record at ECF No. 70–3. A commonly used database service incorrectly omits the "z" in Wertz's surname from the case's short title.

1

Christopoulos moves for summary judgment. She asks the court to find that Wertz's children are entitled to the proceeds and to impose a constructive trust on 50% of them for P. Wertz's benefit. A group of nineteen claimants, aligned here as third-party plaintiffs and referred to as "named beneficiaries," oppose the motion and argue in the alternative that the court should defer the motion's consideration until they have had an opportunity to conduct discovery on their equitable defense of laches.

## I. Background

The facts are undisputed, though the parties disagree about the legal effect of two orders entered by the state court in divorce proceedings. *See* Resp. to Pl.'s SOF ¶ 22 (sole disputed fact as to "characterization" of state court's order). In 2013, two years before he died, Wertz began divorce proceedings against Christopoulos in state court. *Id.* ¶ 12. The state court did not enter an order of marriage dissolution before Wertz's death. *Wertz v. Christopoulos*, 2017 IL App 160560-U, ¶¶ 13–14.

On November 2, 2014, Wertz submitted a designation of beneficiary form to Prudential. *See id.* ¶ 13. The form named neither Christopoulos nor Wertz's children as beneficiaries. *See* Group Universal Life Beneficiary Designation Form & attach., ECF No. 19-1. Rather, Wertz apportioned various percentages of the proceeds to people identified as his nieces and nephews (1% each), siblings (7% each), and the remaining 52% to Linda Trout ("Trout"), one of Wertz's sisters. *See id.* attach. In sum, Trout stands to receive 59% of the proceeds under the designation form. *See id.*

About a month later, in December 2014, Christopoulos filed an emergency petition in the divorce proceedings seeking an order requiring Wertz to designate his children as the policy's beneficiaries. *Wertz*, 2017 IL App 160560-U ¶11. The state court entered a handwritten

"Domestic Relations Order" on December 16, 2014, providing, among other things, that "the children of the parties, D. Wertz, and P. Wertz, shall be designated as irrevocable beneficiaries, share and share alike, until further order of court without prejudice." Resp. to Pl.'s SOF ¶ 14 (quoting ECF No. 19-3 at 3). Wertz did not comply before his death in March 2015. *See id.* ¶¶ 14–15; *Wertz*, 2017 IL App 160560-U ¶ 12. The state court dismissed the divorce proceedings twice after Wertz's death—once due to his death in June 2015 and again for want of prosecution in September 2015. *Wertz*, 2017 IL App 160560-U ¶ 14.

In October 2015, Christopoulos filed in the divorce proceedings a motion to clarify nunc pro tunc the December 2014 order. *Id.* ¶ 15. The motion recited that "[t]he Plan Administrator of Wertz's life insurance policy may be governed by the Employee Retirement Income Security Act of 1974 (ERISA) and if so, there would be a question as to whether the December 16, 2014 order is a 'qualified domestic relations order' (QDRO) under ERISA, and QDRO status is necessary for Prudential to comply with the December 16, 2014 order." *Id.* The motion further stated that "in order to effectuate the interest of the December 16, 2014 order, the order must be clarified nunc pro tunc to provide that it is a QDRO as defined under ERISA." *Id.* Trout objected that the state trial court lacked jurisdiction to enter such an order. *See* ECF No. 53 Ex. A at 1 (minutes entered Feb. 2, 2016, noting objection). [2]

The state court granted Christopoulos' motion on February 2, 2016 and entered a nunc pro tunc order titled "Qualified Domestic Relations Order." *See* Resp. to Pl.'s SOF ¶ 22. Whether this order qualifies as such an order under ERISA is disputed, so it will be referred to as

---

[2] The court cites the minute sheet for the February 2, 2016, proceedings and the February 2, 2016, order as exhibits A and B to ECF No. 53 because the parties do. S*ee* Resp. Pl.'s SOF ¶ 22. The exhibits included no cover sheet identifying them. Exhibit A begins on the third page of the six-page filing docketed as ECF No. 53, and the order begins on the fourth.

3

the "February 2016 order," ECF No. 53 Ex. B. The February 2016 order made stylistic changes to the text of the December 16, 2014, order and added the following:

> 4. It is intended that this Order constitute a Qualified Domestic Relations Order ("QDRO") as defined in section 414(p) of the Internal Revenue Code of 1986, as amended ("Code"), and section 206(d)(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), so as to provide certain Plan benefits, as hereinafter specified, to an "Alternate Payee" (within the meaning of section 414(p)(8) of the Code and section 206(d)(3)(K) of ERISA). This Order shall be administered and interpreted in conformity with the provisions thereof which shall preempt any provisions of state law inconsistent therewith. No amendment of this Order shall require the Plan to provide any type or form of benefit, or any option, not otherwise provided under the then applicable terms of the Plan.
>
> . . . .
>
> 7. Effective immediately, One Hundred Percent (100%) of the Participant's policy benefits accrued under the Plan are assigned to Alternate Payees in equal parts, to be paid in accordance with the provisions of the Plan.

*Compare* ECF No. 53 Ex. B, *with* ECF No. 19-3.

Trout appealed the February 2016 order. Resp. to Pl.'s SOF ¶ 23. The Illinois appellate court affirmed in an unpublished opinion, 2017 IL App 160560-U ¶ 44 (Ill. App. Ct. Sept. 29, 2017), and the Illinois Supreme Court denied Trout's petition for leave to appeal that decision on January 18, 2018, Resp. to Pl.'s SOF ¶ 26; *Wertz v. Christopoulos*, No. 122880, ECF No. 70 Ex. 6. Armed with this decision, Christopoulos filed the instant motion for summary judgment.

## II. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The underlying substantive law governs whether a factual dispute is material:

'irrelevant or unnecessary' factual disputes do not preclude summary judgment." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012) (quoting *Anderson*, 477 U.S. at 248). In resolving summary judgment motions, "facts must be viewed in the light most favorable to," and all reasonable inferences from that evidence must be drawn in favor of, "the nonmoving party[–but] only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Blasius v. Angel Auto., Inc.*, 839 F.3d 639, 644 (7th Cir. 2016) (citing *Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016)).

The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013) (explaining that Rule 56 "imposes an initial burden of production on the party moving for summary judgment to inform the district court why a trial is not necessary" (citation omitted)). After "a properly supported motion for summary judgment is made, the adverse party must" go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quotation omitted); *see also Modrowski*, 712 F.3d at 1169 (stating party opposing summary judgment "must go beyond the pleadings (*e.g.*, produce affidavits, depositions, answers to interrogatories, or admissions on file), to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in her favor") (citations and quotations omitted). Summary judgment is warranted when the nonmoving party cannot establish an essential element of its case on which it will bear the burden of proof at trial. *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012).

### III. Analysis

At the threshold stands the parties disagreement about whether Illinois or federal law, specifically ERISA, determines who gets the life insurance proceeds. The briefs give the matter surprisingly terse treatment. Christopoulos cites a single case, *Travelers Ins. Co. v. Daniels*, 667 F.2d 572, 573 (7th Cir. 1981), to support her contention that Illinois law governs. *Daniels* applied Illinois law in an interpleader action without conducting an extensive, and apparently unnecessary, choice of law analysis.[3] *See id*. The named beneficiaries concede that if the December 2014 and January 2016 orders are enforceable, Illinois law gives the Wertz children a superior equitable right to the proceeds. Resp. to Mot. Summ. J. 9, ECF No. 75. They argue, however, that ERISA preempts Illinois law because the December 2014 and December 2016 orders are void and unenforceable. Meanwhile, *Daniels* does not discuss ERISA preemption.

**A. State Law**

Christopoulos bases the claims of the Wertz children on the state court's orders, requiring Wertz to designate them as beneficiaries. When a person fails to comply with a court order to designate a beneficiary before he or she dies, the beneficiary who under the order should have been designated has an equitable right to the proceeds superior to all except those who have a stronger equitable claim. *See Daniels*, 667 F.2d at 573–74 (citing *Lincoln Nat'l Life Ins. Co. v.*

---

[3] The parties have waived a claim that another state's law governs. The choice of law rules of the forum state (in this case, Illinois) must be applied when deciding what law governs a dispute over life insurance proceeds. *Prudential Ins. Co. of Am. v. Athmer*, 178 F.3d 473, 477 (7th Cir. 1999) (citing *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)). For life insurance policies, Illinois' choice of law rules select the state in which the insured was domiciled when he or she applied for the policy "unless some other state has a more significant relationship." *Athmer*, 178 F.3d at 477; *see also Johnson v. Equitable Life Assur. Soc. of U.S.*, 275 F.2d 315, 317 (7th Cir. 1960) (applying Illinois law because "[a]ll acts of the parties to this action were performed in Illinois"). The parties' Local Rule 56.1 statements of material facts at summary judgment do not say where Wertz was domiciled when he applied for the policy at issue. Regardless, as between Illinois and other states, the court need not conduct a choice of law analysis because the parties have not conducted one or advocated for applicability of the law of a state other than Illinois, resulting in waiver of choice of law. *Selective Ins. Co. of S.C. v. Target Corp.*, 845 F.3d 263, 266 (7th Cir. 2016), *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014) (citing *Vukadinovich v. McCarthy*, 59 F.3d 58, 62 (7th Cir.1995)) (other citations omitted). Thus, if state law governs, the state is Illinois.

*Watson*, 390 N.E.2d 506 (1979)) (collecting additional cases); *Smithberg v. Ill. Mun. Ret. Fund*, 735 N.E.2d 560, 566 (2000) (citing *Perkins v. Stuemke*, 585 N.E.2d 1125 (1992)). For example, in *Perkins*, the 1973 divorce decree required Terry Perkins to maintain his ex-wife, Nancy, as the beneficiary on a life insurance policy. 585 N.E.2d at 1126. His second wife's daughter was the named beneficiary on his life insurance policy when he died in 1989. *Id*. The Illinois appellate court held that Nancy was entitled to the life insurance proceeds and imposed a constructive trust in her favor on them. *Id*. at 1127–30. The Wertz children stand in the same position as Nancy, and so, all things being equal, they have the same equitable interest in the proceeds.

But the named beneficiaries argue that all things are not equal because a final judgment dissolving marriage was not entered before Wertz's death. The named beneficiaries therefore claim that the December 2014 and February 2016 orders are void and so cannot give the Wertz children an equitable claim to the proceeds. An Illinois divorce proceeding abates when one of the spouses dies. *In re Marriage of Black*, 507 N.E.2d 943 (1987); *In re Marriage of Ignatius*, 788 N.E.2d 794, 799 (2003). The named beneficiaries reason that the abatement upon Wertz's death dissolved the December 2014 order and left the state trial court without jurisdiction to enter the February 2016 nunc pro tunc order. Resp. to Mot. for Summ. J. 3–6, ECF No. 75. They also contend that the state court lacked jurisdiction to enter the February 2016 order because it made a substantive change exceeding the limited scope of a permissible nunc pro tunc modification under Illinois procedural law. *Id.* at 6–8. As we will see, this attack on the orders' enforceability recurs under the named beneficiaries' ERISA preemption analysis.

### B. ERISA

An ERISA plan administrator generally must administer the plan "'in accordance with the documents and instruments governing the plan insofar as such documents and instruments

are consistent with the provisions of [Title I] and [Title IV] of [ERISA],' and ERISA provides no exemption from this duty when it comes time to pay benefits." *Kennedy v. Plan Adm'r for DuPont Sav. and Inv. Plan*, 555 U.S. 285, 300 (2009) (quoting 29 U.S.C. § 1104(a)(1)(D)) (alterations in original). ERISA's comprehensive regulatory scheme favors certainty and simplicity for the plan administrator.

> [G]iving a plan participant a clear set of instructions for making his own instructions clear, ERISA forecloses any justification for enquiries into nice expressions of intent, in favor of the virtues of adhering to an uncomplicated rule: "simple administration, avoid[ing] double liability, and ensur[ing] that beneficiaries get what's coming quickly, without the folderol essential under less-certain rules."

*Id*. at 301 (quoting *Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown*, 897 F.2d 275, 283 (7th Cir. 1990)). Thus, if ERISA controls distribution of the proceeds at issue here and no exception applies, their distribution "stands and falls" with the plan documents, which would provide clearly for distribution to the named beneficiaries. *Id*.

The parties apparently agree that the group plan at issue is covered by ERISA. The named beneficiaries cite ERISA and assert that "[a]s a group plan offered by an employer, Wertz's life insurance policy is governed by ERISA." ECF No. 75 at 8. The case they cite, *Gassner v. Int'l Bus. Mach. Corp.*, supports their position, for it finds ERISA applicable to a claim brought by a putative beneficiary of a group life insurance plan held by a person who, like Wertz, was a former IBM employee. 2004 WL 2066887, at *1, 4 (N.D. Ill. Sept. 9, 2004). But several potential barriers to ERISA coverage exist—wrinkles discussed at length in the briefing of a motion for judgment on the pleadings. *E.g.*, ECF No. 45 at 5–10. Some group plans, for instance, allow for a period in which an employee can convert a group life insurance plan to an individual insurance policy, to which ERISA does not apply, upon leaving the employer. *See, e.g., Neuma, Inc. v. Wells Fargo & Co.*, 515 F. Supp. 2d 825, 836 (N.D. Ill. 2006). That

possibility was discussed earlier in this case, but no party raises it at summary judgment, leading the court to conclude that discovery has taken the conversion issue out of the case.

With certain exceptions, ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a); *see generally Gobeille v. Liberty Mut. Ins. Co.*, 136 S. Ct. 936, 943 (2016). The Seventh Circuit has held that, under the governing Supreme Court cases, "a state law cannot invalidate an ERISA plan beneficiary designation by mandating distribution to another person." *Melton v. Melton*, 324 F. 3d 941, 945 (7th Cir. 2003) (quoting *Metropo. Life Ins. Co. v. Johnson*, 297 F.3d 558, 566 (7th Cir. 2002)). Applying this rule in *Melton*, the Seventh Circuit rebuffed an effort to use Illinois' law of constructive trusts to change the named beneficiary of an ERISA-governed life insurance plan. *Id.* at 944–45; *see also Johnson*, 297 F.3d at 566 (same for Illinois doctrine of substantial compliance). The same result must obtain here unless an exception to ERISA preemption covers the claims of the Wertz children.

Christopoulos contends that the February 2016 nunc pro tunc order falls within a carve-out to ERISA preemption not at issue in *Melton* or *Johnson*: the exception for "qualified domestic relations orders" ("QDRO's"), a term defined elsewhere in ERISA. § 1144(b)(7). The cross-referenced subsection provides that "[e]ach pension plan shall provide for the payment of benefits in accordance with the applicable requirements of any qualified domestic relations order." § 1056(d)(3)(A). For an ERISA plan administrator, "Compliance with a QDRO is obligatory." *Blue v. UAL Corp.*, 160 F.3d 383, 385 (7th Cir. 1998). Hence it would seem that if the February 2016 order qualifies as a QDRO, it must be complied with, and the Wertz children should receive the proceeds.

9

The named beneficiaries attack the February 2016 order exclusively on Illinois law grounds. ERISA defines a QDRO as a domestic relations order "which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan," § 1056(d)(3)(B)(ii), and, among other things, "clearly specifies" certain things listed in the statute, § 1056(d)(3)(C). It is these clear specifications and formalities that the December 2014 order arguably lacks and that the February 2016 nunc pro tunc order intended to insert. "The requirement of clear specification is designed to spare the plan administrator from litigation-fomenting ambiguities as to who the beneficiaries designated by the divorce decree are." *Metro. Life Ins. Co. v. Wheaton*, 42 F.3d 1080, 1084 (7th Cir. 1994) (citations omitted). The named beneficiaries do not argue that the February 2016 order is ambiguous or fails any of the statutory tests it must pass to be a QDRO. *See Heisner v. Holland*, 2002 WL 31226946, at *3 (S.D. Ill. Sept. 5, 2002). Rather, they argue that the order is unenforceable. For this argument, they renew their attack on the order's validity and enforceability as a matter of Illinois law, presumably on the theory that neither order qualifies as an "order" because both are void. *See* § 1056d(3)(B)(ii) (defining "domestic relations order" in part as "any judgment, decree, or order (including approval of a property settlement)").

The Seventh Circuit's decision in *Blue* bars the named beneficiaries' attack on the February 2016 order. In *Blue*, a state court issued a series of facially valid QDRO's requiring an ERISA-covered pension plan to make good on Robert Blue's child support obligations. *Id.* at 385. Mr. Blue argued that the orders were invalid under Illinois law because they ordered the payment of certain attorney's fees. *See id*. The Seventh Circuit held that Mr. Blue's arguments

failed because "ERISA does not require, or even permit, a pension fund to look beneath the surface of the [qualified domestic relations] order." *Id*.

The named beneficiaries attempt to distinguish *Blue* because this is an interpleader action involving no decision of a plan administrator, and this court, they submit, is much more competent than a plan administrator to pierce a state court's order. The *Blue* court justified its rule this way:

> ERISA's allocation of functions-in which state courts apply state law to the facts, and pension plans determine whether the resulting orders adequately identify the payee and fall within the limits of benefits available under the plan-is eminently sensible. Pension plan administrators are not lawyers, let alone judges, and the spectacle of administrators second-guessing state judges' decisions under state law would be repellent. Unsuccessful litigants would refile their briefs from the state litigation with pension administrators, in the hope that lightning may strike as laymen review the work of judges. Far better to let the states' appellate courts take care of legal errors by trial judges. Pension plans are high-volume operations, which rely heavily on forms, such as designations of beneficiaries. Administrators are entitled to implement what the forms say, rather than what the signatories may have sought to convey. E.g., *Hightower v. Kirksey*, 157 F.3d 528 (7th Cir.1998). So, too, plans may mechanically implement orders from state courts. Reviewing the substance of these orders would increase the costs of pension administration (costs ultimately passed on to beneficiaries), increase the error rate (to the detriment of participants and their loved ones), and cause delay as plans carried out the additional inquiries (again to the detriment of beneficiaries, who may need the income quickly).

*Id*. at 386; *see also Kennedy*, 555 U.S. at 301–02. If this court may pierce a facially valid QDRO when a plan administrator could not, a different spectacle emerges—one in which who gets insurance proceeds depends, not on the objective criteria set forth in ERISA for deciding whether an order is a QDRO, but instead on whether a court or the plan administrator decides. ERISA should not be interpreted to encourage a plan administrator to bring an interpleader action when paying benefits according to the plan would not subject the administrator to liability. *Wheaton*, 42 F.3d at 1085. If the named beneficiaries get their way, they would be incentivized to argue that their ability to challenge a QDRO in an interpleader action means that the administrator

11

should be liable for nonpayment if it does not interplead disputed proceeds. This has the potential to undermine the regime envisioned by the rule adopted by the *Blue* court.

Additionally, the named beneficiaries swim upstream against ERISA's text. "Statutory definitions control the meaning of statutory words . . . in the usual case." *Burgess v. United States*, 553 U.S. 124, 129 (2008). ERISA supplies only one definition of a QDRO, and nothing in it depends on who applies it. *See* 29 U.S.C. § 1056(d)(3). Instead, the language requiring payment of a QDRO is directed to the contents of the plan rather than framed as a directive to the plan administrator: "Each pension plan shall provide for the payment of benefits in accordance with the applicable requirements of any qualified domestic relations order." § 1056(d)(3)(B); *see also Kennedy*, 555 U.S. at 301 (explaining that "a plan administrator who enforces a QDRO must be said to enforce plan documents, not ignore them"). Mandatory plan language requiring enforcement of a QDRO, a statutorily defined term, would sometimes produce different results in court and before the plan administrator, under the approach the named beneficiaries advocate.

Perhaps most importantly, in fashioning its rule, the *Blue* court sought to keep state law challenges to QDRO's in state appellate courts where they belong. *See Blue*, 160 F.3d at 386. Before this court, the named beneficiaries recycle arguments against the enforceability of the December 2014 and February 2016 orders expressly rejected by the Illinois appellate court. That court held that "Wertz's death on March 8, 2015 abated the dissolution proceedings, but his death did not abate the temporary order directing Wertz to name his children as beneficiaries." *Wertz*, 2017 IL App (1st) 160560-U ¶ 26 (citing *N.Y. Life Ins. Co. v. Sogol*, 311 Ill. App. 3d 156, 160 (Ill. App. Ct. 1999)). Lest it not be misunderstood, the appellate court expressly "hold[s] that the December 16, 2014 temporary support order entered prior to Wertz's death and the dismissal of the case survived the abatement and the dismissal of the dissolution action and neither Wertz's

12

death nor the dismissal of the dissolution case divested the circuit court of jurisdiction to enter the February 2, 2016 QDRO enforcing the support provisions in the temporary order entered on December 16, 2014." *Id.* ¶ 30. And, over a dissent, the court rejected the argument that the nunc pro tunc February 2016 order exceeded the state trial court's authority. *Id.* R¶ 34–41 ("we hold that the circuit court did not err by equitably enforcing the temporary support obligations with a nunc pro tunc QDRO after the dismissal of the case"). In this litigation, the named beneficiaries invite this court to reject both prongs of the Illinois appellate court's decision.[4]

*Blue* requires ERISA to be interpreted to avoid such a result. 160 F.3d at 386. And if ERISA did permit such an attack, The Rooker-Feldman doctrine would prevent this court from entertaining it. *See Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 415–16 (1923); *D.C. Cir. v. Feldman*, 460 U.S. 462, 486 (1983). The Seventh Circuit recently explained the doctrine this way:

> Lower federal courts are not vested with appellate authority over state courts. The Rooker-Feldman doctrine prevents lower federal courts from exercising jurisdiction over cases brought by state court losers challenging state court judgments rendered before the district court proceedings commenced. The rationale for the doctrine is that no matter how wrong a state court judgment may be under federal law, only the Supreme Court of the United States has jurisdiction to review it.

*Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017) (quoting *Sykes v. Cook Cty. Cir. Ct. Prob. Div.*, 837 F.3d 736, 741–42 (7th Cir. 2016)) (alterations in original). Under the Rooker-Feldman doctrine, this court lacks subject matter jurisdiction over "federal claims [that] either

---

[4] The result would be the same if the court could entertain the named beneficiaries' challenge under Illinois law on its merits. The appellate decision, which has become final, provides potent evidence of how an Illinois court would rule on such a challenge *res nova*, and this court would reject such a challenge for the reasons given by the Illinois appellate court. Christopoulos argues at length that the doctrines of res judicata and collateral estoppel apply to that decision, but she makes that argument for the first time in her reply, ECF No. 77 at 2–15. The court does not reach this issue because arguments made for the first time in a reply are waived. *See United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 843 (7th Cir. 2018) (citing *Hess v. Reg–Ellen Mach. Tool Corp.*, 423 F.3d 653, 665 (7th Cir. 2005)); *UIRC–GSA Holdings Inc. v. William Blair & Co.*, 289 F. Supp. 3d 852, 863 (N.D. Ill. 2018) (citation omitted).

'directly' challenge a state court judgment or are 'inextricably intertwined' with one." *Id*. (quoting *Taylor v. Fed. Nat'l Mortg. Ass'n*, 374 F.3d 529, 532 (7th Cir. 2004)).

In *Blue*, the Rooker-Feldman doctrine did not apply because the challenge to a portion of the child support order concerned a method of enforcing a judgment for child support, and Mr. Blue did not seek to overturn the award of child support. 160 F.3d at 384. Here, "[u]nlike *Blue*, in which the participant did not ask the Court to countermand a state court order, [the named beneficiaries] explicitly ask[ ] this Court to inquire into the validity of the 'Qualified Domestic Relations Order' and find it invalid." *Heisner*, 2002 WL 31226946, at *4 (finding Rooker-Feldman doctrine applied to suit against plan administrator to bind them to declare QDRO "void" under Illinois law). *Blue* teaches that a state appellate court is the place to litigate a QDRO's validity under state law. 160 F.3d at 386.

To their credit, the named beneficiaries took their argument to such a court and lost. Even if ERISA permitted them a second bite at the apple here, Rooker-Feldman would snatch it from their grasp. Accordingly, the February 2016 QDRO must be enforced.

### C. Rule 56(d) Request Denied: Laches Does Not Apply to Minors

Relying on Federal Rule of Civil Procedure 56(d), the named beneficiaries also urge the court to delay consideration of Christopoulos' motion for summary judgment. The rule requires the party seeking to delay consideration of a summary judgment motion to establish that "it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). "The Rule places the burden on the non-movant that believes additional discovery is required to 'state the reasons why the party cannot adequately respond to the summary judgment motion without further discovery.'" *Sterk v. Redbox Automated Retail*, 770 F.3d 618, 628 (7th Cir. 2014) (quoting *Deere & Co. v. Ohio Gear*, 462 F.3d 701, 706 (7th Cir. 2006)).

The named beneficiaries argue that they should be permitted to conduct discovery on their affirmative defense of laches, but they have not carried their Rule 56(d) burden. Consideration of a summary judgment motion need not be delayed to allow a party to conduct discovery on a meritless claim or defense. *Arnold v. Villarreal*, 853 F.3d 384, 389 (7th Cir. 2017). Laches is an equitable doctrine. "'Laches,' the corruption of an Old French word (*lasche*) meaning 'lax,' in law means culpable delay in suing. Traditionally, suits in equity were not subject to statutes of limitations, but such a suit could be dismissed on the basis of unreasonable, prejudicial delay by the plaintiff." *Teamsters & Emp'r Welfare Tr. of Ill. v. Gorman Bros. Ready Mix*, 283 F.3d 877, 880 (7th Cir. 2002) (citing *Piper Aircraft Corp. v. Wag–Aero, Inc.,* 741 F.2d 925, 938–39 (7th Cir. 1984)). The named beneficiaries wish to explore in discovery whether they were prejudiced by the failure to attempt to enforce the December 2014 order before Wertz's death. If there had been an effort to enforce the December 2014 order, the argument continues, Wertz's purpose in naming the named beneficiaries might have become clearer. But it is undisputed that neither of Wertz's children had reached age 18 when he died. Resp. to Pl.'s SOF ¶¶ 5, 6. The defense of laches does not treat a minor's failure to act while still under the age of majority as a culpable delay; that is, the defense does not apply to a minor. *In re Estate of Beckhart*, 864 N.E.2d 1002, 1007 (Ill. App. Ct. 2007) (citing *Kurtz v. Solomon*, 656 N.E.2d 184 (Ill. App. Ct. 1995)) (holding laches did not apply to minor's claim to impose constructive trust on life insurance proceeds); *In re Estate of Comiskey*, 497 N.E.2d 342, 343 (Ill. App. Ct. 1986) (collecting authority under Illinois law, including two cases from the 1800's, the earliest being *Smith v. Sackett*, 10 Ill. 534, 548 (Ill. 1849)). No matter what discovery the named defendants conduct, they will be unable to change the dispositive facts, the ages of Wertz's children, so the court denies the request to conduct discovery.

### D. Dionysius Wertz Substituted Because He Has Turned 18

One last procedural matter must be addressed before closing. Dionysius Wertz reached age 18 while this case was pending, Resp. to Pl.'s SOF ¶ 4, yet he has not been substituted as a party in his own name. As part of the relief she requests, Christopoulos seeks payment directly to Dionysius Wertz. The court therefore orders his substitution. *See Vargas v. City of Chicago*, 2011 WL 3101770, at *5 (N.D. Ill. July 21, 2011).

### IV. Conclusion

For the reasons stated, the motion of Joanna Christopoulos for summary judgment, ECF No. 70, is granted. The clerk is ordered to update the docket sheet to reflect the substitution of Dionysius Wertz for Christopoulos in her capacity as his guardian. Christopoulos and Dionysius Wertz are directed to submit a proposed judgment consistent with this opinion on or before September 28, 2018.

Date:   September 24, 2018            /s/
                                       Joan B. Gottschall
                                       United States District Judge